UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| REX BAGLEY, | Case No. 3:26-cv-00236-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| ROBERT H. THOMPSON, in his official capacity as Administrator of the Nevada Division of Welfare and Supportive Services, | |
| Defendant. | |

I.    SUMMARY

*Pro se* Plaintiff Rex Bagley filed a complaint against Robert H. Thompson in his official capacity as Administrator of the Nevada's Division of Social Services ("DSS")[1] (ECF No. 1-1 ("Complaint")) and an application to proceed *in forma pauperis* (ECF No. 1 ("IFP Application")). Plaintiff also filed motions for a preliminary injunction and a temporary restraining order (ECF Nos. 1-7, 3, 4). Plaintiff now objects (ECF No. 9 ("Objection")) to United States Magistrate Judge Carla L. Baldwin's Report and Recommendation (ECF No. 5 ("R&R")), recommending that the Court grant Plaintiff's IFP Application and dismiss the Complaint without leave to amend. Plaintiff filed a motion for expedited review (ECF No. 10) and an emergency motion to stay administrative proceedings (ECF No. 11). Plaintiff also filed another emergency motion for a preliminary injunction and a temporary

---

[1]Nevada's state agency changed names from the Division of Welfare and Supportive Services (DWSS) to the Division of Social Services as of July 1, 2025. *See DWSS is now the Division of Social Service (DSS)*, Nevada Registry (Jul. 17, 2025), https://www.nevadaregistry.org/news-updates/dwss-is-now-the-division-of-social-services-dss/ The Court therefore will address the agency as DSS and will direct the Clerk of Court to update Defendant's name in the title accordingly.

restraining order (ECF Nos. 12, 13 ("Emergency Motion")) and a supplemental notice (ECF No. 14).

For the reasons discussed below, the Court accepts the R&R in part and rejects it in part, grants the IFP Application, dismisses Counts III, IV, VI, and VII without leave to amend, allows Counts I, II, and V of the Complaint to proceed, and sets an expedited briefing schedule on the Emergency Motion.

## II.    RELEVANT BACKGROUND

The Supplemental Nutrition Assistance Program ("SNAP") is a federal program administered through state agencies, such as Nevada's DSS. Federal statute established SNAP and authorized the issuance of regulations to administer the program. *See* 7 U.S.C. § 2013(c); *see also* 7 C.F.R. §§ 271 *et seq*. The statute requires recipients to meet certain work requirements unless an exception applies such as a disability or responsibility for a dependent child. *See* 7 U.S.C. § 2015(o)(2), (3). Federal regulations further establish when able-bodied adults without dependents ("ABAWDs") can receive SNAP benefits. *See* 7 C.F.R. §§ 273.3(c); 273.24(b). Unless an ABAWD recipient meets certain work requirements, either through at least part-time employment or participation in a work program such as the Employment & Training ("E&T") Program, they may only receive three months of SNAP benefits. *See* 7 C.F.R. § 273.24(b). ABAWD recipients who "would have fulfilled the work requirement" through employment or training, "but missed some hours for good cause" may receive an exception so long as the absence is "temporary." *Id.* at § 273.24(b)(2) ("Good Cause Exception").

Plaintiff is a recipient of SNAP benefits. (ECF No. 1-1 at 3.) On February 8, 2026, Plaintiff received a Notice of Decision ("NOD") from DSS alleging that Plaintiff was ineligible for benefits in March 2026 due to failure to comply with the ABAWD work requirements. (*Id.* at 4 (citing ECF No. 1-3 at 2 ("First NOD")).) Plaintiff seemingly concedes that he has not been employed nor has he participated in a work program like the E&T Program. (*Id.*) However, Plaintiff contends that his work requirement should be excused because (1) he repeatedly requested enrollment in the E&T Program; and (2)

2

the Good Cause Exception applies because structural barriers beyond his control, including rural residence, lack of transportation, and lack of employment opportunities, prevent Plaintiff from meeting the work requirement. (*Id.*) The same day Plaintiff received the First NOD, he requested a hearing. (ECF No. 1-3 at 6.) A DSS Field Customer Service Officer confirmed receipt of the request the next day, February 9. (*Id.*) DSS sent another NOD on February 19, stating that Plaintiff was eligible for SNAP benefits for the month of March 2026. (*Id.* at 15 ("Second NOD").) On March 10, DSS sent another NOD defining Plaintiff as an "ABAWD not meeting work requirements" and eligible for benefits in April 2026 but an "ineligible ABAWD" in May 2026. (*Id.* at 21 ("Third NOD").) On March 12, DSS sent another NOD, identifying Plaintiff as "eligible" for May 2026 but noting that these benefits were reinstated through July 31, 2026 due to his request for "continued benefits during the hearing process." (*Id.* at 29, 33 ("Fourth NOD").)

Plaintiff filed the Complaint on April 3, 2026. (ECF No. 1-1.) On April 10, Judge Baldwin recommended that the Complaint be dismissed for lack of jurisdiction as insufficiently ripe. (ECF No. 5.) In his Objection to the R&R, Plaintiff shared that after the R&R was issued, Plaintiff received a notice from DSS setting a hearing on May 4 and laying out the grounds for DSS's decision to end Plaintiff's SNAP benefits. (ECF No. 9 at 3, 48 ("Basis of Action").) Plaintiff also filed emergency motions for a stay of the administrative proceeding and seeking expedited review before the May 4 hearing ("Hearing") with DSS. (ECF Nos. 10, 11.) The Hearing was held telephonically on May 11 after DSS granted Plaintiff's request for a continuance. (ECF No. 12 at 9.) Days later, Nevada's Department of Human Services issued a written decision, affirming DSS's Third NOD terminating Plaintiff's benefits as of May 2026.[2] (ECF No. 14 at 5-29 ("Hearing Decision").) The Hearing Decision is appealable to this Court. (Id. at 25.) Plaintiff then filed an emergency motion for a temporary restraining order and preliminary injunctive relief. (ECF Nos. 12, 13.)

---

[2]Plaintiff represented in the supplemental notice that his SNAP benefits would end effective June 1, 2026. (ECF No. 14 at 2.)

## III.   SCREENING R&R

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's Report and Recommendation, the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus de novo because Plaintiff filed his Objection.

Judge Baldwin first recommends granting Plaintiff's IFP Application. (ECF No. 5 at 1-2.) While Plaintiff states that he "objects to the R&R in its entirety" (ECF No. 9 at 11), the Court will accept this recommendation without further review because Plaintiff received the intended outcome of his IFP Application and did not explicitly object to its granting.

Judge Baldwin then screens the Complaint under 28 U.S.C. § 1915(e) and finds the Court does not have jurisdiction because Plaintiff's claims are not ripe. (ECF No. 5 at 4.) Judge Baldwin specifically cites to the Fourth NOD from DSS, indicating Plaintiff's benefits were reinstated through July 31, 2026. (ECF No. 1-3 at 33.) Judge Baldwin concludes that Plaintiff therefore has not been injured and without an immediate injury, the claim is not sufficiently ripe for judicial review. (ECF No. 5 at 4 (citing *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996)).) As Plaintiff explains in his Objection, the DSS later clarified in the Basis of Action that the Fourth NOD only afforded a temporary continuation of benefits pending the Hearing. (ECF No. 9 at 14, 47-53.) Moreover, Plaintiff seeks relief for violations of his procedural due process rights regarding his SNAP benefits. In this way, Plaintiff is challenging the ongoing procedures applied when contemplating the reduction or elimination of his SNAP benefits. Plaintiff is not suing for the injury of the termination of his benefits, which at the time of briefing Plaintiff acknowledges has not yet occurred. Instead, Plaintiff seeks the proper procedural process he is owed under the Constitution when the government is contemplating the elimination of his SNAP benefits. *See Zinermon v. Burch,* 494 U.S. 113, 126 (1990) ("The

constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."); *Goldberg v. Kelly*, 397 U.S. 254, 256 (1970) (describing plaintiffs as recipients of financial aid whose benefits were "terminated, or *about to be* terminated" (emphasis added)). The Court therefore rejects the R&R's recommendation to dismiss the Complaint for lack of jurisdiction and finds the claims are ripe for judicial review.

The Court also rejects Judge Baldwin's alternative basis for finding Plaintiff's claims to be premature. Judge Baldwin suggests that Plaintiff's claims should be dismissed as premature because Plaintiff filed suit a week before federal regulations required DSS to hold a hearing and resolve any objections. (ECF No. 5 at 4 n.2.) The Court interprets this as an administrative exhaustion concern. The Court rejects this reasoning for two reasons. First, Plaintiff has now fully exhausted his administrative remedies. (ECF No. 14 at 29 (directing Plaintiff to seek appeal of DSS's final decision to the District Court of Nevada).) But second, Plaintiff is not required to exhaust administrative remedies when seeking relief under the Civil Rights Act, including Section 1983 claims, regarding welfare benefits. *See Damico v. California*, 389 U.S. 416, 417, (1967).

The Court now screens each of the claims in the Complaint.[3]

### A.    Count I: Procedural Due Process

Plaintiff sues DSS under Section 1983 for violating his constitutional procedural due process rights in terminating his SNAP benefits. (ECF No. 1-1 at 10-11.) To comply with procedural due process, SNAP benefits may not be reduced or terminated without timely and adequate notice, an opportunity to contest the allegations, a fair hearing before an impartial decisionmaker, and continuation of benefits pending the hearing. *See Goldberg v. Kelly*, 397 U.S. 254 (1970). Plaintiff alleges DSS violated these requirements

---

[3]The Court incorporates here the screening standard Judge Baldwin articulates in the R&R. (ECF No. 5 at 2-4.) In summary, because Plaintiff filed an IFP Application, the Court is required by statute to first screen the Complaint before directing service. *See* 28 U.S.C. § 1915(e)(2). Under this statute, the Court determines whether the Complaint should be dismissed for failure to state a claim. *See id.* at a § 1915(e)(2)(B)(ii).

for a variety of reasons: (1) failure to enroll Plaintiff in the E&T program; (2) failure to issue a hearing decision within 60 days as required by federal regulation, 7 C.F.R. § 273.15(c)(1); (3) issuing contradictory NODs and (4) failure to provide a hearing. (ECF No. 1-1 at 11.)

Enrollment in the E&T program is unrelated to any of the procedural due process requirements outlined in *Goldberg v. Kelly*, 397 U.S. 254 (1970). Additionally, Plaintiff's allegation that he did not receive a hearing is no longer true as Plaintiff concedes he received a hearing on May 11. (ECF Nos. 13, 14.) However, failure to promptly hold a hearing and confusing and contradictory NODs implicate procedural due process concerns regarding timely and adequate notice and hearing. Liberally construing *pro se* Plaintiff's allegations and construing them as true and resolving all doubts in his favor,[4] the Court finds Plaintiff sufficiently alleges a procedural due process claim and will allow it to proceed on these grounds at this stage.

### B.    Count II: Violation of Federal SNAP Regulations

Plaintiff sues DSS under Section 1983 for violating federal SNAP benefits. 42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States."  *West v. Atkins*, 487 U.S. 42, 48-49 (1988). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

---

[4]*See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

Here, Plaintiff seeks relief under Section 1983 for the violation of various federal regulations governing SNAP benefits. Plaintiff alleges DSS violated: (1) 7 C.F.R. § 273.24(a)(3) which defines the E&T program; (2) 7 C.F.R. § 273.24(b)(2) which defines the Good Cause Exception to the ABAWD time limit;[5] (3) 7 C.F.R. § 273.13(a)(1) which defines timely notice of an adverse action; and (4) 7 C.F.R. § 273.15(c)(1) which requires the state agency to provide a hearing within 60 days of a request. (ECF No. 1-1 at 12-13.)

Even accepting as true all of Plaintiff's factual allegations and construing them in the light most favorable to Plaintiff, the Court finds Plaintiff fails to allege that DSS violated 7 C.F.R §§ 273.24(a)(3), 273.24(b)(2), 273.13(a)(1). 7 C.F.R § 273.24(a)(3) merely defines the E&T program. Liberally construing Plaintiff's claim, the Court understands Plaintiff intends to allege DSS violated 7 C.F.R § 273.24(d)(1), which allows for ABAWDs to remain eligible by participating in a work program such as the E&T Program. However, the regulation does not mandate enrollment in the work program upon request or even outline conditions for enrollment. While Plaintiff states he attempted to enroll in the E&T Program, he acknowledges that he was not enrolled and therefore did not meet the eligibility requirements outlined in the regulations – specifically participating in the work program for a certain number of hours. *See* 7 C.F.R §§ 273.24(d)(1)(ii), (iii). As to the second alleged regulatory violation, 7 C.F.R. § 273.24(b)(2) defines the Good Cause Exception to the ABAWD time-limit, allowing an individual who "missed some hours for good cause" to be "considered to have fulfilled the work requirement if the absence… is temporary." Plaintiff argues DSS violated this regulation "by adopting an unlawful 'employed-only' interpretation." (ECF No. 1-1 at 12.) The Court finds DSS followed the

---

[5]Plaintiff also cites to C.F.R. § 273.7(i) in this allegation. This provision does not exist but liberally construing the Complaint, Plaintiff seems to invoke C.F.R. § 273.7(c)(7)(i). This subsection outlines information that must be included in a state agency's E&T plan in order to obtain additional funding from the federal government, including a "pledge to offer a qualifying activity to all at-risk ABAWD applicants and recipients." While Plaintiff appears to challenge DSS's commitment to this pledge in his individual case, his Complaint does not challenge this additional funding or allege that DSS's E&T Program did not include this pledge. Therefore, the Court will not further address Plaintiff's invocations of this regulation.

plain text of the regulation by refusing to apply the Good Cause Exception to Plaintiff, who acknowledges he is not seeking a "temporary" good cause exemption, but a permanent one due to structural factors such as his rural residence. While Plaintiff may and does seek to challenge the constitutionality of this provision (*Id.* at 13), the allegations demonstrate that DSS did not violate this regulation but rather followed its plain text. Finally, Plaintiff alleges that DSS violated 7 C.F.R. § 273.13(a)(1) "by issuing NODs that were contradictory, incomplete, inaccurate, and legally impossible, and by refusing to provide written explanations for adverse actions." (ECF No. 1-1 at 12-13.) The cited regulation only addresses the parameters of timeliness of notices from DSS, and Plaintiff does not appear to allege the notices were untimely. Plaintiff's allegations regarding the adequacy of the NODs may go to his first claim of procedural due process but they do not allege a violation of the relevant regulation.[6]

The last remaining alleged regulatory violation is 7 C.F.R. § 273.15(c)(1), which requires DSS to conduct a hearing and notify the household of its decision within 60 days of receiving a request. The Ninth Circuit already squarely held that this specific regulation is actionable, particularly because the regulation implements Congress's statutory requirement that a recipient receive a "fair hearing." *See Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (citing 7 U.S.C. § 2020(e)(10)); *see also Alexander v. Sandoval*, 532 U.S. at 291 ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."). Plaintiff requested a hearing on February 8 and DSS confirmed receipt on February 9. (ECF No. 1-3 at 6.) The Hearing was not scheduled until May 4, 24 days after the deadline for DSS to not only schedule a hearing but also resolve the dispute and provide a final decision. (ECF No. 9 at 10.) The Ninth Circuit in *Withrow* held that even "substantial compliance" with this particular regulatory deadline was not a sufficient defense. *See* 942 F.2d at 1387-88 ("The fact that absolutely perfect compliance is

---

[6]Plaintiff however has now received a written explanation for DSS's adverse action in the form of the Basis of Action, provided to Plaintiff after the R&R issued. (ECF No. 9 at 48.)

unattainable does not of itself preclude an injunction requiring the state to comply with the regulations.") Therefore, the Court finds Plaintiff sufficiently alleges a Section 1983 claim for violation of 7 C.F.R. § 273.15(c)(1) at this stage and will allow the claim to proceed.

### C.    Count III: Equal Protection

Plaintiff alleges that the application of the Good Cause Exception to only employed ABAWDs in 7 C.F.R. § 273.24(b)(2) violates the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1-1 at 13.) To state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A federal policy will survive an equal protection challenge under the rational basis test so long as there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir. 2021) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 320, (1993)).

Plaintiff alleges that DSS's disparate treatment between ABAWDs who are employed or enrolled in a work program and those ABAWDs with "structural barriers" to employment such as rural residence, lacks any rational basis." (ECF No. 1-1 at 13.) The Court disagrees. First, the relevant regulation affords a temporary exception for ABAWDs who are employed or enrolled in a work program but "missed some hours… for circumstances beyond the individual's control" such as illness and emergency. 7 C.F.R. § 273.24(b)(2). The Court finds unemployed ABAWDs who are not enrolled in a work program and facing permanent, structural barriers are not "similarly situated" for purposes of an Equal Protection claim. While Plaintiff asserts the distinction is "between similarly situated individuals" (ECF No. 1-1 at 13), a "'[t]hreadbare recital' that another class is similarly situated will not suffice," even at the screening stage. *Olson v. California*, 104 F.4th 66, 77 (9th Cir. 2024) (citation omitted). Second, even if the classes were similarly

9

situated, Plaintiff has the burden "to negate 'every conceivable basis which might support' such disparate treatment." *Id.* (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012)). Plaintiff only makes the conclusory statement that that the distinction is "arbitrary, irrational, and contrary to the plain text." (ECF No. 1-1 at 13); *see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (holding that mere recitals of the elements of a cause of action, supported only by conclusory statements, does not sufficiently state a claim). But the Court recognizes the government has a legitimate interest in providing temporary exceptions for ABAWDs who otherwise qualify for continuing benefits compared to permanent exceptions. The cost of providing and administrating the type of exception Plaintiff seeks would be significant and would ultimately limit the amount of SNAP funding available to all recipients. Therefore, the Court finds Plaintiff's Equal Protection claim fails and dismisses it without leave to amend, as these two issues could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

### D.    Count IV: Unconstitutional Conditions

Plaintiff alleges that by requiring Plaintiff to comply with work requirements when he faced structural barriers to do so and failing to enroll Plaintiff in the E&T program, Defendant imposed unconstitutional conditions. Under the somewhat "mysterious" unconstitutional conditions doctrine, the government may not require an individual to forgo a constitutional right in order to obtain some benefit or privilege. Richard A. Epstein, *Unconstitutional Conditions, State Power, and the Limits of Consent*, 102 Harv. L. Rev. 4, 7 (1988) (citing *Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 485 U.S. 360 (1988)). Plaintiff here fails to identify what constitutional right Defendant required or coerced Plaintiff into giving up in order to obtain his SNAP benefits. For example, Plaintiff has no constitutional right to enrollment in the E&T program. Even if he did, an unconstitutional condition claim would not be proper, as the government did not condition his receipt of SNAP benefits on giving up that alleged right. Plaintiff invokes two Supreme Court cases to support his otherwise conclusory statement that Defendant "conditioned Plaintiff's access to food assistance that is impossible, unlawful, or contrary

to federal rights."[7] (ECF No. 1-1 at 14 (citing *Zinermon*, 494 U.S. 113; *Sherbert v. Verner*, 374 U.S. 398 (1963)).) The first case, *Zinermon*, does not invoke the unconstitutional conditions doctrine. *See* 494 U.S. 113 (addressing the adequacy of post-deprivation tort remedies in redressing due process violations). In the second case, *Sherbert*, the Supreme Court held that conditioning unemployment benefits on working during a religious holiday constituted an impermissible infringement on the First Amendment. *See* 374 U.S. at 404-05. Here, Defendant imposes no condition that implicates a constitutional right. Therefore, the Court dismisses this count without leave to amend, as this issue cannot be cured by amendment. *See Cato*, 70 F.3d at 1106.

### E.    Count V: Unlawful Withholding of Agency Action

Plaintiff sues Defendant for unlawful withholding of required agency action. (ECF No. 1-1 at 14-15.) Plaintiff invokes the statute granting federal courts subject matter jurisdiction over federal questions. (*Id.* at 14 (citing 28 U.S.C. § 1331).) However, liberally construing the Complaint, Plaintiff appears to invoke the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Under the APA, the Court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiff cites Defendant's "inaction in the face of a mandatory federal deadline" imposed by 7 C.F.R. § 273.15(c)(1). The cited regulation imposes a mandatory 60-day deadline on the agency, with no room for discretion. *See Withrow*, 942 F.2d at 1387 ("The language of the federal regulations is unequivocal, and states that a decision 'shall' or 'must' be made within the specified number of days."). For the reasons detailed in the Court's analysis of Count II, the Court will allow this APA claim to proceed at this time.

### F.    Count VI: Ongoing Violation of Federal Law

Plaintiff alleges an "ongoing violation of federal law" and seeks "[p]rospective injunctive relief." (ECF No. 1-1 at 15.) Plaintiff cites "Ex parte Young," which the Court construes as a citation to the Supreme Court case of that name. *See* 209 U.S. 123 (1908).

---

[7]Notably, to invoke the unconstitutional conditions doctrine, the conditions must infringe on a constitutional right. That the conditions are "impossible, unlawful" or even "contrary to federal rights" is not sufficient to state a claim of unconstitutional conditions.

Paired with Plaintiff's invocation of the Eleventh Amendment, Plaintiff seems to argue that he may seek injunctive relief against the government here. This may be Plaintiff's argument in support of the form of relief he seeks, but it is not a free-standing cause of action. Therefore, the Court will dismiss this count without leave to amend as this issue cannot be cured by amendment. *See Cato*, 70 F.3d at 1106.

### G.   Count VII: Inadequacy of State Remedies and Denial of a Meaningful Opportunity to be Heard

In this count, Plaintiff reiterates his same complaints against Defendant, such as inadequate notice and failure to apply the Good Cause Exception to him. (ECF No. 1-1 at 16.) He also emphasizes Defendant's failure to set a hearing as rendering state remedies inadequate in order to pursue his claims under Section 1983. (*Id.*) He alleges the "state court's refusal to provide a meaningful opportunity to be heard constitutes and independent due-process violation." (*Id.*) Notably, Plaintiff confirms that he has now had the Hearing. (ECF No. 14.) That decision is appealable not in state court, but before this Court. (*Id.* at 29.) The Court finds Plaintiff does not state an independent cause of action and dismisses this count without leave to amend, as this issue cannot be cured by amendment. *See Cato*, 70 F.3d at 1106.

## IV.   REMAINING MOTIONS

The Court denies Plaintiff's motion for an emergency stay and expedited review (ECF Nos. 10, 11) as moot because there Plaintiff asked the Court to provide requested relief before the Hearing, which was already held on May 11. (ECF No. 14 at 5.) The Court also denies as moot Plaintiff's initial motions for a temporary restraining order and preliminary injunctive relief (ECF Nos. 1-7, 3, 4), as Plaintiff filed new motions containing relevant additional factual information. Considering the urgent nature of the request, specifically the impending termination of Plaintiff's SNAP benefits, the Court will set an expedited briefing schedule to address Plaintiff's remaining motions for a temporary restraining order and preliminary injunctive relief. (ECF Nos. 12, 13.)

## *V.*     CONCLUSION

The Court notes that Plaintiff made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's initial motions for injunctive relief (ECF Nos. 1-7, 3, 4) and motions to stay administrative proceedings and expedite review (ECF Nos. 10, 11) are denied as moot.

It is therefore ordered that Plaintiff's Objection (ECF No. 9) to Judge Baldwin's Report and Recommendation (ECF No. 5) is sustained in part and overruled in part.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 5) is accepted in part  and rejected in part, as specified below.

It is further ordered that Plaintiff's IFP Application (ECF No. 1) is granted.

It is further ordered that the Clerk of Court file the Complaint (ECF No. 1-1) and that Counts I, II (only as to alleged violation of 7 C.F.R. § 273.15(c)(1)), and V proceed against Defendant.

It is further ordered that Counts III, IV, VI, and VII of the Complaint (ECF No. 1-1) are dismissed without leave to amend.

It is further order that the Clerk of Court kindly amend the case title to reflect the correct agency name for the Defendant: Division of Social Services.

It is further ordered that Defendant file a response to the pending emergency motions for injunctive relief (ECF Nos. 12, 13) within seven days after service of process. Plaintiff will then have five days to file a reply.

In light of Plaintiff's IFP status, the Court refers the matter of service of process to the Magistrate Judge.

DATED THIS 2nd Day of June 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

13